IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA A. SCHAEFER, | : | No. 1:24cv649 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Latella) |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Barbara Schaefer, a college graduate and former university faculty member, filed an application for a period of disability and disability insurance benefits with the Social Security Administration ("SSA") pursuant to Title II of the Social Security Act on July 29, 2021.[1] (Tr. 17).  The Commissioner of the SSA initially denied Schaefer's application on October 1, 2021. (Tr. 17).  Schaefer then filed for reconsideration which was denied on March 14, 2022.[2] (Tr. 17). Thereafter, Schaefer filed a request for a hearing before an Administrative Law Judge ("ALJ") on May 13, 2022. (Tr. 17). The ALJ conducted the requested hearing and determined by way of a written opinion dated February 13, 2023 that

---

[1] The SSA's transcript filed as docket entry 9 is cited herein as "Tr."

[2] Pursuant to the Federal Rules of Civil Procedure, Frank Bisignano, Acting Commissioner of the SSA, is automatically substituted as defendant in this suit. See FED. R. CIV. P. 25(d).

Schaefer is not disabled and thus not entitled to benefits. (Tr. 17-31).

Subsequently, Schaefer filed a request for review of the ALJ's decision with the

SSA Appeals Counsel. (Tr. 1-3).  On February 22, 2024, the Appeals Counsel

denied her relief and the ALJ's decision thus became the final decision of the

Commissioner. (Tr. 1).

After issue exhaustion with the SSA, Schaefer now seeks judicial review of

the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §

1383(c)(3). (Doc. 1).  Before the court is a thorough Report and

Recommendation ("R&R") by United States Magistrate Judge Leo A. Latella.

(Doc. 16). The R&R recommends that the decision of the Commissioner denying

plaintiff's application for Title II benefits be affirmed. (Id.)  The R&R also

recommends that the Clerk of Court be directed to close this case. (Id.)  Schaefer

filed an objection to the R&R on September 11, 2025. (Doc. 17).  The

government responded in opposition. (Doc. 18). This matter is thus ripe for a

decision.

**Background**

SSA provides benefits to individuals who cannot work because of physical

disabilities, mental disabilities, or due to a combination of both. See Biestek v.

Berryhill, 587 U.S. 97, 98 (2019). The magistrate judge laid out Schaefer's

conditions in detail with reference to the administrative record.  Portions of his

summary are adopted here after review of that record.[3]

Schaefer suffers from multiple severe impairments, among them,

idiopathic hypersomnia with sleep apnea, depression, and anxiety.[4] (Tr. 19).

Schaefer was 52 years old on the alleged disability onset date, thereby

classifying her as an individual closely approaching advanced age under 20

C.F.R. § 404.1563. (Tr. 29). Schaefer earned a Ph.D. in School Community and

Clinical Child Psychology, and she previously worked as a professor at the

Pennsylvania State University from 1997 to December 16, 2020. (Tr. 50, 237,

249, 349). Schaefer filed a request for a hearing before an ALJ on May 13, 2022.

(Tr. 17).  ALJ Erin Powers conducted the requested hearing on February 1, 2023.

(Tr. 17).

---

[3] Neither party objected to the recitation of facts set forth in the R&R. To the extent that a
significant portion of the R&R simply reviews the record without determinations, those
background facts are accepted and adopted. See FED. R. CIV. P. 72(b) 1983 Advisory
Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there
is no clear error on the face of the record to accept the recommendation").  Due to the issues
involved, the court has reviewed the factual record carefully to understand Schaefer's physical
and mental health diagnoses, her symptoms, and her treatment to address those symptoms.
The court has also carefully reviewed Schaefer's medical records, documentation regarding
her diagnoses, opinion evidence, and her testimony before the ALJ.

[4] The ALJ identified Schaefer's non-severe impairments as: "periodic limb movement disorder,
right hand tremor, outlet dysfunction, constipation, stress incontinence, mild degenerative joint
disease of the right hip, eye infection, laser hair removal, and COVID-19." (Tr. 20).

During the administrative hearing, Schaefer testified that she stopped working as a professor at Penn State in December 2020 because of her impairments. (Tr. 51).  She further testified that due to her hypersomnia, she feels like a human "zombie" regardless of how much she sleeps. (Tr. 54). Consequently, Schaefer had difficulty performing her past work as a college professor. (Tr. 21).

Following that hearing, the ALJ upheld the SSA's decision that Schaefer is not disabled and therefore not entitled to the benefits sought. (Tr. 31).   In doing so, the ALJ applied the five-step sequential analysis contained in 20 C.F.R. § 404.1520(a) and § 416.920(a) to assess Schaefer's entitlement to benefits.[5]  At step one, a determination of present substantial gainful activity was inapplicable since Schaefer stopped working at Pennsylvania State as a professor in December of 2020. (Tr. 18, 28).  At step two, the ALJ found that Schaefer had the following severe impairments: idiopathic hypersomnia with sleep apnea, hypertension, ventricular hypertrophy, obesity, depression, anxiety, and adjustment disorder. (Tr. 19).  At step three, however, the ALJ determined that

---

[5] The Commissioner must determine under this analysis: "(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity; and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience." (Doc. 16, at 14, 15) (citing 20 C.F.R. §§ 404.1520(a), 416.920(a).

none of those impairments, considered individually or in combination, met or equaled any of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (Tr. 20-21).

The ALJ also determined that Schaefer "has the residual functional capacity [("RFC")] to perform light work . . . except she must avoid all workplace hazards such as unprotected heights and open moving machinery." (Tr. 22). The ALJ noted that Schaefer "can understand, remember, and carry out detailed, but not complex, instructions. She can perform occasional climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds. She can occasionally balance . . . stoop, kneel, crouch, and crawl." (Tr. 22). The ALJ also indicated that although the combination of Schaefer's impairments "clearly precludes her from going back" to her work as a college professor and from sustaining such highly skilled work, "it does not document limitations that would preclude the less complex tasks adopted herein." (Tr. 24). The ALJ concluded that Schaefer's course of treatment as well as the objective findings on testing and physical examinations were not entirely consistent with Schaefer's complaints. (Tr. 24).

In making the RFC determination, the ALJ considered Schaefer's medical records and the opinion evidence in her file along with her testimony and statements regarding her impairments. Before the ALJ, Schaefer testified that she saw a cardiologist for tachycardia, high blood pressure, and hypersomnia.

(Tr. 23).  Schaefer received treatment for her heart issues, but her fatigue

persisted.[6] (Tr. 23).  Plaintiff also testified that she needed to take 1-2 naps

during the day and had to lie down after any activity. (Tr. 23).  According to

Schaefer, she had previously met or exceeded expectations as a college

professor, but by 2019, she was no longer meeting those expectations. (Tr. 23).

Additionally, plaintiff stated that she and the university mutually agreed that she

would stop teaching and take a leave of absence after the fall 2020 semester.

(Tr. 23). Schaefer also reported attending weekly counseling sessions for

depression. (Tr. 23).

On the other hand, Schaefer testified that she engages in various

activities, including doing art, walking her dogs, visiting with a friend, instructing a

weekly karate class, driving, and taking vacations. (Tr. 23). Per Schaefer's

testimony, she and her husband hired someone to assist with cleaning. (Tr. 23).

Still, she stated that she performs minimal household tasks and that it takes her

half a day to complete the laundry.  (Tr. 23).

Referencing Schaefer's treatment records and the medical opinions in

evidence which are summarized below, the ALJ found that Schaefer's

"statements concerning the intensity, persistence and limiting effects of [her]

---

[6] As of the time of the hearing with the ALJ, Schaefer was on medication including Trazadone, Effexor, and Gabapentin. (Tr. 23).  She was also undertaking behavioral therapy.

symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 24).  With respect to the medical evidence in the case, the ALJ considered opinions from the State agency psychological and medical consultants, records from Dennis Dombrowski, M.D., records from Kim Mitchell, M.A., L.P.C., and a "Sleep Disorders Medical Opinion" from Nicole M. Mentzer, a certified registered nurse practitioner ("CRNP").[7] (Tr. 21-28).

The ALJ first considered the administrative medical findings of the State agency psychological consultants Kelly Roberts Psy.D. and Lori Anne Young Psy.D. (Tr. 26).  The consultants assessed mild limitations in Schaefer's understanding, remembering, or applying information. (Tr. 26).  They also identified her limitations in interacting with others as well as moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 26).   The ALJ noted that those limitations were consistent with and supported by the record. (Tr. 26-27).

---

[7] In her decision, the ALJ refers to the professionals at the SSA, State College branch, as "State agency consultants." These consultants presented findings upon which the disability examiner relied to deny Schaefer's disability benefit claim at both the initial and reconsideration levels.  At the initial level, the disability examiner relied on the findings of Kelly Roberts Psy.D. (medical specialty: psychology) and Dilip S. Kar, M.D. (medical specialty: gynecology), in determining that Schaefer was not disabled. (Tr., Ex.1A).  On reconsideration, the examiner relied on the opinions of Lori Anne Young Psy.D. (medical specialty: psychology) and Stephanie Prosperi, M.D. (medical specialty: family or general practice). (Tr., Ex.4A).

The record further reflects that Dennis Dombrowski, M.D. was associated with Sunpointe Health, (Tr. 715-16); Kim Mitchell, M.A., L.P.C. practiced with Independent Psychology And Psychotherapy Practices, (Tr. 255, 610-20), and CRNP Mentzer was affiliated with PennState Health Milton S. Hershey Medical Center, (Tr. 697).

Nonetheless, the ALJ concluded that the State agency psychological consultants' suggested moderate limitations in adapting or managing oneself, as well as their recommendation limiting Schaefer to 1-2 step tasks were inconsistent with and not supported by the record. (Tr. 26).

The ALJ considered the examination findings of Dr. Keil, a licensed psychologist at Centre Psychology Group. (Tr. 21, 25, 26-28). The ALJ noted that "Dr. Keil's neuropsychological testing showed [Shaefer] to continue to function in the average to superior range of cognitive functioning." (Tr. 26). Additionally, the ALJ indicated that "Dr. Keil's exam findings document reduced functioning, but testing scores that are still well within the average to superior range." As a result, the ALJ observed that the limitations found in the State agency psychological consultants' findings were inconsistent with Dr. Keil's objective findings. (Tr. 26).[8]

The ALJ then considered the administrative findings of the State agency medical consultants Dilip S. Kar, M.D. and Stephanie Prosperi, M.D. (Tr. 26-27). The State agency medical consultants opined that Schaefer could perform light work with postural and hazard limitations. (Tr., Exs. 1A, 4A). The ALJ found those findings persuasive. (Tr. 27). The ALJ explained that these conclusions

---

[8] Similarly, the ALJ concluded that such limitations were also inconsistent with Schaefer's activities of daily living including teaching a weekly karate class, taking art classes, going out for meals and coffee, driving and shopping. (Tr. 26).

were "supported by narrative explanations with signs and findings" and were generally consistent with the overall evidence in the record. (Tr. 27). The ALJ further noted that the State agency medical consultants' findings "cover the fatigue issues as documented and supported by the nature, scope, findings, and presentation during the course of treatment." (Tr. 27).

The ALJ also examined statements from Dr. Dombrowski and K. Mitchell, M.A., L.P.C. regarding Schaefer's disability and FMLA paperwork. (Tr. 27). The ALJ found that "[i]nsofar as these statements were rendered in the context of difficulties she would have in her college professor position or reference flares of symptoms she could reasonably expect to have while performing in her college professor position, they are not inconsistent with this decision." (Tr. 27). The ALJ concluded, however, that "insofar as [these statements] suggest she has limitations that would preclude all work or preclude less mentally demanding work, they cannot be found supported by or consistent with the evidence of record as a whole." (Tr. 27). Per the ALJ, the "nature, scope, findings, and statements made during the course of treatment" do not support such extreme limitations, noting that Schaefer is still quite active. (Tr. 27). The ALJ noted that a limitation to a range of light exertion would adequately address plaintiff's fatigue

issues and is supported by the State agency medical consultants' findings.[9] (Tr. 27).

The ALJ next considered N. Mentzer, CRNP's opinion. The ALJ found CRNP Mentzer's opinion—that Schaefer would be incapable of performing low-stress work as it worsens her fatigue and that she would miss four or more days of work per month—unpersuasive. (Tr. 27, 28). The ALJ explained that the opinion lacks a narrative explanation supported by signs and findings; the only test referenced was the November 2019 polysomnogram. (Tr. 28). Moreover, the ALJ noted that CRNP Mentzer's opinion was inconsistent with the objective findings from Dr. Keil's evaluations insofar as they pertain to the accommodation of Schaefer's weaknesses. (Tr. 28). Further, the ALJ stated that CRNP Mentzer's opinion was not supported by Schaefer's range of activities or the State agency medical consultants' findings. (Tr. 28). The ALJ added, "if [Schaefer] were performing the highly skilled, complex tasks involved in her prior college professor work, it may be reasonable to suggest that such stressors would cause such exacerbations of her symptoms. However, in the less

---

[9] In addition to the statements of Dr. Dombrowski and K. Mitchell, M.A., L.P.C., the ALJ reviewed Dr. Keil's examination findings. (Tr. 27). Per the ALJ, Dr. Keil's findings do not document the intensity or persistence of functional limitations that would preclude Schaefer from performing sustained, detailed tasks.

demanding range of work adopted herein, the evidence does not reasonably establish that such limitations would be supported." (Tr. 28).

Ultimately, the ALJ found Dr. Keil's examination findings and opinions more persuasive than CRNP Mentzer's. The ALJ explained that Dr. Keil's opinion was "supported by a narrative explanation with signs and findings as well as two, multiple day examinations and testing [performed on] [Schaefer]." (Tr. 28). Dr. Keil opined that Schaefer's impairments would "be expected to significantly interfere with complex daily tasks." (Tr. 28). According to the ALJ, this opinion was consistent with the "overall evidence of record, including the claimant's treatment history, objective findings, and her activities of daily living." (Tr. 28). The ALJ further observed that mental status examinations consistently found Schaefer to have "fair memory, fair attention span conversationally, and logical thought processes." (Tr. 28). The ALJ also stated that "the weaknesses documented on Dr. Keil's testing are either fully accommodated by the limitation to detailed instructions or are otherwise addressed with a limitation to light exertion where her exposure to workplace hazards, climbing, and other postural maneuvers are limited." (Tr. 28).

At step four, the ALJ noted that Schaefer is unable to perform past relevant work. (Tr. 28). The ALJ mentioned that plaintiff had past relevant work as a university faculty member, a program director, and a research supervisor. (Tr.

28).  Per the ALJ, these jobs were highly skilled and would involve complex tasks. (Tr. 28).

Then, at step five, the ALJ determined based on Schaefer's age, education, work experience, and residual functional capacity (also referred to herein as "RFC") that there were jobs in significant numbers in the national economy that Schaefer could perform. (Tr. 28-29).  The ALJ referenced the positions listed for light work as described by the vocational expert during Schaefer's hearing. (Tr. 29).  The ALJ specifically identified occupations of price marker, order clerk, and office helper. (Tr. 29).  The ALJ thus concluded that Schaefer was not disabled and denied her application for benefits.

Schaefer's request for judicial review challenges the ALJ's determination regarding her RFC and contends that such determination is not supported by substantial evidence. (Doc. 12, at 4).  Per plaintiff, the ALJ's evaluation of CRNP Mentzer's opinion is fatally flawed, fails to meet the articulation requirements of the regulations, and frustrates meaningful review. (Id.)  Through a well-reasoned R&R, Magistrate Judge Latella concluded that substantial evidence supported the ALJ's supportability and consistency analyses as to CRNP Mentzer's opinion. (Doc. 16, at 26-35).

With respect to Schaefer's objections, most merely reiterate the arguments presented in her submissions which the R&R fully addressed.

**Jurisdiction**

The court has federal question jurisdiction over reviews of SSA determinations. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has her principal place of business....").

**Legal Standard**

**1. Reports and Recommendations**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

13

The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. <u>Henderson v. Carlson</u>, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. <u>Id.</u>

### 2. Judicial Review of SSA Decisions

During judicial review of SSA determinations, the court must determine whether "substantial evidence" supports the ALJ's decision. <u>See</u> 42 U.S.C. § 405(g); <u>Hagans v. Comm'r of Soc. Sec.</u>, 694 F.3d 287, 292 (3d Cir. 2012); <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999). No matter the meaning of " 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." <u>Biestek</u>, 587 U.S. at 103.

Under this standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." <u>Id.</u> at 102 (quoting <u>Consol. Edison Co. of New York v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938) (emphasis deleted, brackets omitted)). "[S]ubstantial evidence has been defined as 'more than a mere scintilla[.]' " <u>Hagans</u>, 694 F.3d at 292 (quoting <u>Plummer</u>, 186 F.3d at 427).  "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek</u>, 587 U.S. at 103 (quoting <u>Consol. Edison</u>, 305 U.S. at 229)).

14

Moreover, substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner, through the ALJ, must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Analysis**

Schaefer has filed objections to the R&R. Schaefer's objections center on three (3) main issues: 1) whether the ALJ's supportability analysis of CRNP Mentzer's opinion is supported by substantial evidence; 2) whether the ALJ and the R&R discussed how plaintiff's activities are inconsistent with CRNP Mentzer's opined limitations; and 3) whether the ALJ meaningfully addressed the third-party report submitted by Emily Steffensmeier, Schaefer's friend and neighbor.

The court will address these issues below.  However, after a *de novo*
review of the R&R, the court will adopt the R&R and affirm the decision of the
Commissioner because the SSA's decision enjoys the support of substantial
evidence.

### 1. Substantial Evidence Supports the ALJ's supportability analysis of CRNP Mentzer's opinion

First, Schaefer objects to the R&R's conclusion that the ALJ's supportability
analysis of CRNP Mentzer's opinion is supported by substantial evidence. (Doc.
17, at 2).  With respect to the R&R, Schaefer argues that it fails to show how the
ALJ conducted a proper supportability finding pursuant to 20 C.F.R. §
404.1520c(c)(1).[10] (Id.)  As to the ALJ's decision, Schaefer contends that the
ALJ's analysis was so brief that it does not permit meaningful judicial review. (Id.
at 3).

CRNP Mentzer stated that Schaefer needs unscheduled breaks, would be
off-task, and should avoid such things as driving, heights, moving machinery,
working alone, power tools, routine/repetitive tasks. (Tr., Ex. 29F).  Additionally,
CRNP Mentzer opined that Schaefer would be incapable of performing low-

---

[10] With respect to "supportability," the new regulations provide that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source are to
support his or her medical opinion(s) or prior administrative medical finding(s), the more
persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§
404.1520c(c)(1), 416.920c(c)(1).

stress work as it worsens her fatigue and that she would miss four or more days of work per month. (Tr., Ex. 29F).

The ALJ stated in her decision that CRNP Mentzer's opinion is unpersuasive because it is not supported by a narrative explanation with signs and findings.[11] (Tr. 28). According to the ALJ, the only test result referenced in CRNP Mentzer's opinion was the November 2019 polysomnogram. (Tr. 28, 1041). The ALJ added that CRNP Mentzer's opinion is also inconsistent with the objective findings from Dr. Keil's evaluations and with the functional limitations Dr. Keil identified. (Tr., Exs. 5F, 28F). The ALJ added that the extent of limitations proposed by CRNP Mentzer is also inconsistent with Schaefer's range of activities and is unsupported by the State agency medical consultants' findings. (Tr. 28). The ALJ further noted that had Schaefer been performing the highly skilled and complex tasks required in her prior work position as a college professor, it might be reasonable to suggest that such stressors would exacerbate her symptoms. (Tr. 28). However, in the less demanding range of work adopted by the ALJ, the evidence does not reasonably establish that the limitations CRNP Mentzer suggested are warranted.[12] (Tr. 28). In this regard, the

---

[11] Under 20 C.F.R. § 404.1502(g), "signs" refers to one or more anatomical or physiological abnormalities that can be observed, apart from statements (symptoms), and must be shown by medically acceptable clinical diagnostic techniques.

[12] The ALJ determined that Schaefer:

ALJ concluded that the findings of Dr. Keil's examination as well as his statements are far more persuasive.  The ALJ then proceeded to address Dr. Keil's findings in further detail. (Tr. 28).

Contrary to Schaefer's assertions, the ALJ's analysis outlined above is sufficiently detailed and permits meaningful judicial review.  Schaefer also contends in her objection that it is unclear why the ALJ did not find that the polysomnogram constitutes abnormal objective medical evidence given that she was found to have a severe impairment of idiopathic hypersomnia.[13] (Doc. 17, at 3). The R&R fully addressed this issue and correctly concluded that "[w]hile we will not reweigh the evidence, we see no additional signs, as defined by the Regulations, omitted from the ALJ's analysis in notes from either appointment

---

> [H]as the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must avoid all workplace hazards such as unprotected heights and open moving machinery. She can understand, remember, and carry out detailed, but not complex, instructions. She can perform occasional climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds. She can occasionally balance (as defined by the SCO), stoop, kneel, crouch, and crawl.

(Tr. 22).

[13] To support her position, plaintiff included in her objections several remarks and statements from CRNP Mentzer's opinion. (Doc. 17, at 2-3). The ALJ need not "undertake an exhaustive discussion of all the evidence." Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004); Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."); see also Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings[.]").

which would mandate a different determination by the ALJ with respect to CRNP Mentzer's opinion."[14] (Doc. 16, at 27).

Schaefer's argument is a request for the court to reweigh the evidence in her favor, which this court is not permitted to do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). Therefore, Schaefer's objection will be overruled.

**2. Schaefer's daily activities are inconsistent with CRNP Mentzer's opined limitations**

Second, Schaefer objects to the R&R's finding that the ALJ's discussion of plaintiff's daily activities complied with the regulatory factor of consistency. (Doc. 17, at 4).[15] Schaefer argues that the ALJ and the R&R have not shown how her activities are inconsistent with CRNP Mentzer's opined limitations.[16] (Id. at 4). Again, Magistrate Judge Latella fully addressed this issue in the R&R and

---

[14] The R&R fully and adequately addressed this issue. (See Doc. 16, at 25-28).

[15] With respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[16] In support of her position that she requires an unusual level of breaks and naps to carry out her daily activities, Schaefer cited several statements from the record in her objections. These statements include her hiring of a helper for house cleaning, her inability to stay awake for more than 4 to 5 hours, her need for one to two naps per day, her husband's responsibility for all household finances, and her testimony that she must take breaks while teaching a weekly karate class. (Doc. 17, at 4).

indicated that the "ALJ discussed Schaefer's 'range of activities' twice. . . . [and] indicated that those activities included teaching a weekly karate class, taking art classes, visiting with a friend, going out for meals and coffee, driving, and shopping." (Doc. 16, at 28).  Magistrate Judge Latella added that "[w]e are satisfied that the ALJ's reference to a 'range of activities,' with the activities comprising the range discussed within the same section, is sufficient." (Id.) Moreover, the R&R explained that:

> [T]he ALJ determined that CRNP Mentzer's opinion was not persuasive for multiple reasons. The ALJ concluded that CRNP Mentzer's opinion was not supported by a narrative explanation with signs and findings, because it was inconsistent with objective findings on Dr. Keil's evaluation, it was not supported by the State medical consultant's findings, *and* because it was not consistent with Schaefer's range of activities. (R. at 28). The ALJ did not find CRNP's opinion unpersuasive based upon Schaefer's range of activities alone.

(Id. at 29 n.3).

After careful review of the record, it is apparent that the ALJ explained in detail how Schaefer's activities are inconsistent with the limitations proposed by CRNP Mentzer.  Schaefer's objection ultimately amounts to a request to reweigh the evidence, a task the court is not permitted to undertake.[17]  See also Messina

---

[17] Schaefer further contends that Dr. Keil's 2023 opinion that plaintiff would have "significant interference" with her daily functioning due to sleep disorder and fatigue is consistent with CRNP Mentzer's opinion. (Doc. 17, at 5).  The record does not support this contention. When Dr. Keil made this determination, he expressly referenced his 2021 note, which specifically

v. Comm'r of Soc. Sec., 844 F. App'x 586, 589-90 (3d Cir. 2021) ("[W]e cannot reweigh the evidence or make our own factual determinations"). Schaefer's objection will thus be overruled.

### 3. The ALJ considered and discussed the third-party report

Schaefer also argues in her objection that there is no showing that the ALJ meaningfully discussed the third-party report of Schaefer's close friend and neighbor, Emily Steffensmeier. (Doc. 17, at 5; see also Tr., Ex. 16E). Specifically, Schaefer cites portions of the report noting that plaintiff needs to rest most of the day, forgets tasks even with reminders, and relies on her husband to assume most of the household management. (Id.)

Pursuant to 20 C.F.R. § 404.1529(a), an ALJ is required "to determine if the claimant's statements about [her] symptoms are consistent with medical and other evidence in the record, and it further requires consideration of nonmedical sources' descriptions of how the claimant's symptoms affect their ability to perform activities of daily living." Forjohn v. Kijakazi, 2023 WL 3611531, at *5 (E.D. Pa. May 22, 2023). The Third Circuit has indicated that "[s]imilar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before [her]." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112,

---

indicated that Schaefer's symptoms would be expected to have significant impact on her ability to maintain her prior level of performance at work, a role that involved complex daily tasks. (Tr. 399, 1037). Hence, Schaefer's objection will be overruled.

122 (3d Cir. 2000). By doing so, "the ALJ must explicitly determine the weight she will afford this evidence." <u>Melton v. Kijakazi</u>, No. CV 20-5307, 2022 WL 1227972, at *6 (E.D. Pa. Apr. 25, 2022); <u>See</u> <u>Forjohn</u>, 2023 WL 3611531, at *5 ("[A]n ALJ must consider third-party statements in order to determine if the claimant's assertions about [her] limitations are consistent with the record.") (citation omitted)).

Here, the ALJ cited Emily Steffensmeier's report, (Tr., Ex. 16E), and explained:

> The claimant's friend indicated that the claimant's health has declined over the years due to fatigue and cognitive decline. The claimant began forgetting things and was unable to keep up with her coursework and students. She had to give up her career as a professor, miss out on special events with her children, and give up activities she loved, including hiking, biking, intense karate, and travel. The claimant experiences extreme post-exertional malaise, and it may take her days or weeks to recover. She needs to rest most of the day and spends most of her time at home (Ex. 16E).

(Tr. 23).[18]

The ALJ cited the report again and indicated that:

> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the objective medical evidence and other evidence of record. The claimant was a college professor, and the combination of her impairments clearly precludes

---

[18] The court will cite to document 9, the transcript, as "Tr."

22

> her from going back to that work, as evidenced by her
> decline in performance evaluations over the years (Ex.
> 14E). However, while it is reasonable to find that the effects
> of her impairments would preclude sustaining such highly
> skilled work, it does not document limitations that would
> preclude the less complex tasks adopted herein. **(Ex. 16E)**.

(Tr. 24) (The citation to Emily Steffensmeier's report is highlighted in bold).

As indicated in the written opinion, the ALJ took into account the entire record including objective medical evidence and "other evidence." (Tr. 22-24). The ALJ not only cited Emily Steffensmeier's report in the written opinion but also considered it and discussed it as part of the non-medical evidence.[19] The ALJ is not required to articulate how she considered evidence from nonmedical sources. See 20 C.F.R. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section."). The ALJ is only required to determine if Schaefer's statements about her symptoms are consistent with medical and other evidence in the record and to consider the nonmedical sources' descriptions of how Schaefer's symptoms affect her ability to perform activities of

---

[19] This case differs from other cases in this circuit where remand was ordered, in part, because the ALJ failed to explicitly consider non-medical evidence. See Burnett, 220 F.3d at 122 (the ALJ failed to mention the testimony of plaintiff's husband and that of her neighbor); see also Forjohn, 2023 WL 3611531, at *5 (holding that the ALJ erred by failing to explain why she rejected plaintiff's wife's diary even though the ALJ acknowledged its existence); Maldonado v. Kijakazi, 2022 WL 17742618, at *3 (E.D. Pa. Dec. 16, 2022) (remanding the case to the agency because the ALJ failed to consider or even mention plaintiff's mother's submissions in his decision); Melton, 2022 WL 1227972, at *6 (holding "that the ALJ erred by failing explicitly to decide what weight she would accord to Plaintiff's mother's report.").

daily living, which the ALJ has done here. See 20 C.F.R. § 404.1529(a). Thus,

Schaefer's objection will be overruled.

**Conclusion**

For the reasons set forth above, Schaefer's objections will be overruled, the

R&R, (Doc. 16), will be adopted, and the decision of the Commissioner will be

affirmed.  The Clerk of Court will be directed to close this case.  An appropriate

order follows.

Date: 12/9/25

JUDGE JULIA K. MUNLEY
United States District Court

24